## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------------------X  Case No. 17-CV-4721

JENET CHRISTIAN and NEIDHRA MAHENDRAN,

                    Plaintiffs,  **COMPLAINT**

         - against -

                            **PLAINTIFFS DEMAND**
METROPOLITAN SPECIALTY LAB'S, INC.,   **A TRIAL BY JURY**
VADIM TEVELEV, *Individually*, and
LEO ABRAMOVSKY, *Individually*,

                    Defendants.
---------------------------------------------------------------------------X

Plaintiffs, JENET CHRISTIAN and NEIDHRA MAHENDRAN, by and through their attorneys, Law Office of Yuriy Moshes, P.C., hereby complain of Defendants, upon information and belief, as follows:

### NATURE OF THE CASE

1. Plaintiffs bring this action against Defendants pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") and the New York State Labor Law, Articles 6 & 19 ("NYLL") for **failure and refusal to pay Plaintiffs' earned wages** for work performed. As a result of Defendants' violation of the NYLL and FLSA, Plaintiffs are entitled to (a) the full amount of underpayment, (b) attorneys' fees and costs, (c) prejudgment interest, and (d) an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due.

2. Plaintiff JENET CHRISTIAN also brings this action charging that **Defendants terminated her employment solely in retaliation for complaining** about Defendants' failure to pay earned wages, in violation of the NYLL §215, and seeks to recover lost wages, and an additional amount as liquidated damages, reasonable attorneys' fees and

costs.

3. Plaintiffs also complain pursuant to the <u>Wage Theft Prevention Act</u>, New York Labor Law § 195, *et seq.,* and seek to redress the damages they have suffered as a result of Defendants' **<u>failure to give them written notice of wage rates</u>**, including, inter alia, his rate of pay.

## JURISDICTION AND VENUE

4. Jurisdiction of this Court is proper under §216(b) of the FLSA (29 U.S.C. § 216 (b)), §§ 1331 and 1343.

5. The Court has supplemental jurisdiction over Plaintiffs' claims brought under state law pursuant to 28 U.S.C. §1367.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as it is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

## PARTIES

7. At all times relevant, Plaintiff JENET CHRISTIAN ("CHRISTIAN") was and is a resident of the State of New York and the County of Richmond.

8. At all times relevant, Plaintiff NEIDHRA MAHENDRAN ("MAHENDRAN") was and is a resident of the State of New York and the County of Richmond.

9. That at all times relevant hereto, Plaintiff CHRISTIAN and Plaintiff MAHENDRAN are collectively referred to herein as "Plaintiffs."

10. At all times relevant, Defendant METROPOLITAN SPECIALTY LAB'S, INC. ("METROPOLITAN") was and is a domestic business corporation, duly existing pursuant to, and by virtue of, the laws of the State of New York, with its principal place of business

2

located at 1551 Richmond Road, Suite 101, Staten Island, NY 10304.

11. That at all times relevant hereto, Defendant METROPOLITAN was and is a full-service clinical reference laboratory.

12. That at all times relevant hereto, Plaintiffs were employees of Defendant METROPOLITAN.

13. That at all times relevant hereto, Defendant VADIM TEVELEV ("TEVELEV") was an employee of Defendant METROPOLITAN, holding the position of "President."

14. That at all times relevant hereto, Defendant TEVELEV was Plaintiffs' supervisor and had supervisory authority over Plaintiffs.

15. That at all times relevant hereto, Defendant LEO ABRAMOVSKY ("ABRAMOVSKY") was an employee of Defendant METROPOLITAN, holding the position of "Owner."

16. That at all times relevant hereto, Defendant ABRAMOVSKY was Plaintiffs' supervisor and had supervisory authority over Plaintiffs.

17. That at all times relevant hereto, Defendant METROPOLITAN, Defendant TEVELEV, and Defendant ABRAMOVSKY are collectively referred to herein as "Defendants."

18. At all times relevant hereto, Defendants had the power to, and were responsible for, determining the wages to be paid to Plaintiffs.

19. At all times relevant hereto, Defendants had the power to, and did in fact, establish the terms of Plaintiffs' employment, including Plaintiffs' schedule and rate of pay.

20. The FLSA defines "employer" to include any person acting directly or indirectly in the interest of an employer in relation to an employee and an employee is anyone who is suffered or permitted to work. As a result, including as further described below, Defendants are liable as "employers" under the FLSA.

21. Defendants are also jointly and severally liable as joint employers under 29 C.F.R. §791.2 for the violations complained of herein.

22. Upon information and belief, Defendants grossed more than $500,000 in the past fiscal year, and further, during Plaintiffs' employment with Defendants, Plaintiffs routinely engaged in activities which facilitate or relate to interstate or foreign commerce while on the job.

## **MATERIAL FACTS**

23. While Defendants did not maintain any system of recording hours actually worked by their employees, Defendants maintained schedules for their employees regarding the times Defendants mandated them to work.

24. Nevertheless, throughout Plaintiffs' employment, Defendants wholly failed to pay Plaintiffs all of their earned wages for all hours worked as required by law, in violation of the FLSA and NYLL.

25. In addition, Defendants failed to even pay Plaintiffs the minimum wage rate for all hours worked as required by law, in violation of the FLSA and NYLL.

26. Furthermore, Defendants did not provide Plaintiffs with any sort of written notice regarding: their regular rate of pay, overtime rate of pay, how they were to be paid, their "regular payday," the official name of the employer and any other names used for business, the address and phone number of the employer's main office or principal location, nor, allowances taken as part of the minimum wage (including, inter alia, tips).

27. Because Defendants failed to give Plaintiffs proper notice pursuant to the Wage Theft Prevention Act throughout the entirety of their employment, they are each entitled to $5,000.00 in damages, plus costs and attorneys' fees.

28. Plaintiffs have been damaged by Defendants' failure to pay their lawfully earned wages.

29. Defendants' failure to pay Plaintiffs their proper earned wages required by law was willful.

30. Throughout all relevant time periods, upon information and belief, Defendants also failed to maintain accurate and sufficient time records.

31. Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.  As such, Plaintiffs demand Liquidated and Punitive Damages as against both Defendants, jointly and severally.

32. Insofar as is relevant, from in or around February 2011 to December 31, 2013, the New York State minimum wage was $7.25 per hour.  From December 31, 2013 to December 31, 2014, the New York State minimum wage was $8.00 per hour.  From December 31, 2014 to December 31, 2015, the New York State minimum wage was $8.75 per hour, and from December 31, 2015 to December 31, 2016, it was $9.00 per hour.

## Facts Relevant to Plaintiff MAHENDRAN

33. In or around February 2011, Plaintiff MAHENDRAN began working for Defendants as a "Medical Technologist," earning approximately $26.00 per hour.

34. Throughout Plaintiff MAHENDRAN's employment, Plaintiff MAHENDRAN regularly and habitually worked forty (40) hours per week for Defendants.

35. However, in or around late-September 2012, while Plaintiff MAHENDRAN continued to perform her job duties, Defendants stopped paying Plaintiff MAHENDRAN for all of the hours that she worked.  In fact, Defendants also stopped paying Plaintiff MAHENDRAN on regular designated paydays and instead sporadically paid Plaintiff MAHENDRAN random amounts of money and random times.

36. Then, in or around late-November 2012, Defendants eliminated Plaintiff MAHENDRAN's positon and terminated her employment after Defendants lost their license to continue performing testing and operating the laboratory.

37. From in or around late-September 2012 to in or around late-November 2012, which is a period of approximately nine (9) weeks, Plaintiff MAHENDRAN was entitled to be compensated $9,360.00 ($26/hr x 40 hrs/week x 9 wks) for all the hours that she worked. However, for this entire nine (9) week period, Defendants only paid Plaintiff MAHENDRAN a total of $1,250.00 (approximately $3.47/hour). Accordingly, Defendants not only failed to compensate Plaintiff MAHENDRAN at the minimum wage but also underpaid Plaintiff MAHENDRAN **$8,110.00** (9,360 – 1,250) for all hours worked during this nine (9) week period.

38. On or about July 23, 2013, after Defendants' license was reinstated, Defendants offered Plaintiff MAHENDRAN the position of "General Lab Supervisor" at her old rate of $26.00 per hour, which Plaintiff MAHENDRAN accepted.

39. However, just like before she was terminated, Defendants continued to fail to pay Plaintiff MAHENDRAN for all of the hours that she worked.

40. In fact, from on or about July 23, 2013 to on or about December 8, 2013, which is a period of twenty (20) weeks, Plaintiff MAHENDRAN was entitled to be compensated $20,800.00 ($26/hr x 40 hrs/week x 20 wks) for all the hours that she worked. However, for this entire twenty (20) week period, Defendants failed to pay Plaintiff MAHENDRAN any wages at all for the hours she worked. Accordingly, Defendants underpaid Plaintiff MAHENDRAN **$20,800.00** for all hours worked during this twenty (20) week period.

41. On or about December 8, 2013, as a result of Plaintiff MAHENDRAN's excellent work

performance, Defendants issued Plaintiff MAHENDRAN a raise in pay to $1,500.00 per week. While Plaintiff MAHENDRAN accepted the raise, she politely requested a letter from Defendants confirming her new rate of pay as well as acknowledging that Defendants still owed Plaintiff MAHENDRAN a significant sum of money in unpaid wages.

42. As such, on or about December 12, 2013, Defendant TEVELEV gave Plaintiff MAHENDRAN a letter stating:

> This is to certify that [Plaintiff MAHENDRAN] is an employee at [Defendant METROPOLITAN]. She has been associated with the lab from January 2011 to December 2012 as a Medical Technologist and from July 2013 onwards as a General Lab Supervisor. Her gross salary is $3,000 for a pay period of Two weeks.
>
> Due to various reasons including the disastrous effects of Hurricane Sandy on October 29th of 2012 the laboratory lost the permit to perform testing. Our continued efforts by following the New York State Department of Health regulations the laboratory was reinstated with the permit in July 2013. We started to function slowly.
>
> Owing to the disruption of our services, the salaries of [Plaintiff MAHENDRAN] remained impaired since 2012. However we are committed to pay all past salaries and along with her regular salary to the said employee once the lab resumes its full function.

43. From on or about December 8, 2013 to on or about September 30, 2015, which is a period of approximately ninety-two (92) weeks, Plaintiff MAHENDRAN was entitled to be compensated $138,000.00 ($1,500/week x 92 wks) for all the hours that she worked. However, for this entire ninety-two (92) week period, Defendants only paid Plaintiff MAHENDRAN a total of $91,325.00. Accordingly, Defendants underpaid Plaintiff MAHENDRAN **$46,675.00** (138,000 – 91,325) for all hours worked during this ninety-two (92) week period.

7

44. On or about September 30, 2015, Plaintiff MAHENDRAN resigned from her position as a result of Defendants' failure to compensate her for all hours worked at the agreed upon rate.

45. **Thus, Plaintiff MAHENDRAN is owed a total of $75,585.00 ($8,110.00 + $20,800.00 + $46,675.00) in unpaid wages for work performed for Defendants.**

46. In addition, pursuant to NYLL § 191(3), "If employment is terminated, the employer shall pay the wages not later than the regular pay day for the pay period during which the termination occurred, as established in accordance with the provisions of this section." However, Defendants remain in violation of the law and have still failed to pay Plaintiff MAHENDRAN any of her earned wages.

### Facts Relevant to Plaintiff CHRISTIAN

47. In or around February 2012, Plaintiff CHRISTIAN began working for Defendants as an "Accession Personnel / Receptionist," earning approximately $15.00 per hour.

48. Throughout Plaintiff CHRISTIAN's employment, Plaintiff CHRISTIAN regularly and habitually worked forty (40) hours per week for Defendants.

49. In or around August 2012, Plaintiff CHRISTIAN received a raise to $975.00 per week.

50. However, on or about September 16, 2012, while Plaintiff CHRISTIAN continued to perform her job duties, Defendants completely stopped paying Plaintiff CHRISTIAN at the agreed upon rate of $975.00 per week. In fact, Defendants also stopped paying Plaintiff CHRISTIAN on regular designated paydays and instead sporadically paid Plaintiff CHRISTIAN random amounts of money and random times.

51. From on or about September 16, 2012 to on or about January 18, 2014, which is a period of seventy (70) weeks, Plaintiff CHRISTIAN was entitled to be paid $68,250.00

($975/wk x 70 wks) for all the hours that she worked. However, for this entire seventy (70) week period, Defendants only paid Plaintiff CHRISTIAN a total of $11,250.00 (approximately $4.02/hour). Accordingly, Defendants not only failed to compensate Plaintiff CHRISTIAN at the minimum wage but also underpaid Plaintiff CHRISTIAN **$57,000.00** (68,250 – 11,250) for all hours worked during this seventy (70) week period.

52. Throughout this seventy (70) week period, although Plaintiff CHRISTIAN constantly and continually pleaded with Defendants to compensate her at their agreed upon rate of $975.00 per week, Defendants always responded that they would pay Plaintiff CHRISTIAN all the wages that she is owed when Defendants acquire some additional clients and bring in more revenue. As such, Plaintiff CHRISTIAN trusted Defendants and continued working for them with the expectation that she would eventually be compensated for all the hours that she worked.

53. On or about January 18, 2014, although Defendants began paying Plaintiff CHRISTIAN in full on regular paydays, Defendants wholly failed to provide Plaintiff CHRISTIAN with the $57,000 in unpaid wages that they still owed to her.

54. For the following three (3) years, Plaintiff CHRISTIAN continued to regularly plead with Defendants to pay her the $57,000.00 in wages to which she was entitled. Each time she would request her wages, Defendants always reassured her that they would eventually pay her.

55. However, on or about January 25, 2017, everything changed when Plaintiff CHRISTIAN again demanded that Defendants pay her the $57,000.00 that Defendants owed to her in unpaid wages. Shockingly, in response, Defendant TEVELEV and Defendant ABRAMOVSKY stated for the first time, "If you continue to ask about this money, you

can leave. I will not pay you a single penny. You can stay as long as you are not going to ask about the money. Otherwise, you can leave."

56. Thus, on or about January 25, 2017, Defendants not only refused to pay Plaintiff CHRISTIAN the $57,000.00 in unpaid wages but also terminated Plaintiff CHRISTIAN's employment solely in retaliation for raising her rights under the FLSA and NYLL and requesting to be paid her wages.

57. **Thus, Plaintiff CHRISTIAN still is owed a total of $57,000.00 in unpaid wages for work performed for Defendants.**

58. Furthermore, based on the temporal proximity and Defendants' admission, it is clear that on or about January 25, 2017, Defendants terminated Plaintiff CHRISTIAN's employment in retaliation for complaining about Defendants' failure to comply with the FLSA and NYLL.

59. Defendants obviously did not like the fact that Plaintiff CHRISTIAN was complaining about Defendants' failure to compensate her, and thus decided to terminate her employment in retaliation.

60. But for the fact that Plaintiff CHRISTIAN complained of Defendants' failure to comply with the FLSA and NYLL, Defendants would not have terminated her employment.

61. In addition, pursuant to NYLL § 191(3), "If employment is terminated, the employer shall pay the wages not later than the regular pay day for the pay period during which the termination occurred, as established in accordance with the provisions of this section." However, Defendants remain in violation of the law and have still failed to pay Plaintiff CHRISTIAN any of her earned wages.

62. As a result of the retaliatory termination, Plaintiff CHRISTIAN feels extremely humiliated,

degraded, victimized, embarrassed, and emotionally distressed.

63. As a result of the acts and conduct complained of herein, Plaintiff CHRISTIAN has suffered the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails.

## AS A FIRST CAUSE OF ACTION
## VIOLATION OF THE FAIR LABOR STANDARDS ACT
## MINIMUM WAGE

64. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

65. Defendants willfully employed Plaintiffs in the aforementioned enterprise and failed to compensate Plaintiffs at the required minimum hourly rate for their employment.

66. Defendants' failure to pay Plaintiffs the mandated minimum hourly pay in accordance with the FLSA was a direct violation of the FLSA, specifically 29 U.S.C. § 206.

67. Defendants' failure to pay proper minimum wages for each hour worked was willful within the meaning of 29 U.S.C. § 255.

68. Defendants' failure to comply with the FLSA caused Plaintiffs to suffer loss of wages.

## AS A SECOND CAUSE OF ACTION
## VIOLATION OF NEW YORK LABOR LAW § 652(1)
## MINIMUM WAGE

69. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

70. Plaintiffs were employees of Defendants within the meaning of the NYLL.

71. Defendants failed to pay Plaintiffs the required minimum hourly wage rate for one hour of work.

72. Defendants violated Plaintiffs' right to minimum wage pay under § 652(1); New York Labor Law, Article 19.

73. Defendants also violated New York's Minimum Wage Order of 12 NYCRR Part No. 142.

74. On account of such violations, Defendants are liable to Plaintiffs for actual, statutory and liquidated damages.

75. Defendants' actions were willful.

76. Defendants' failure to comply with the NYLL and New York's Minimum Wage Order caused Plaintiffs to suffer loss of wages.

## AS A THIRD CAUSE OF ACTION
## VIOLATION OF THE NEW YORK LABOR LAW
## FAILURE TO PAY EARNED WAGES

77. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

78. Defendants, in withholding Plaintiffs' wages without cause or bona fide dispute as to Plaintiffs' right and Defendants' obligation to pay, have violated the NYLL, including §193.

79. As a consequence, under NYLL §198, Plaintiffs are entitled to (a) the full amount of underpayment, (b) attorneys' fees and costs, (c) prejudgment interest, and (d) an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due.

### AS A FOURTH CAUSE OF ACTION
### VIOLATION OF THE NEW YORK LABOR LAW
### RETALIATION

80. Plaintiff CHRISTIAN repeats and realleges each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

81. Plaintiff CHRISTIAN complained to Defendants about practices that violate the NYLL, including but not limited to, Defendants' failure to pay earned wages.

82. After Plaintiff CHRISTIAN complained, Defendants retaliated against her by terminating her employment.

83. By retaliating against Plaintiff CHRISTIAN for her complaint about violations of the NYLL, Defendants violated NYLL §215, which states that, "No employer ... shall discharge, penalize, or in any other manner discriminate against an employee because such employee has made a complaint to his employer ... that employer has violated any provision of [the NYLL]."

84. Due to Defendants' violation of NYLL §215, Plaintiff CHRISTIAN is entitled to recover all appropriate legal and equitable relief, including but not limited to, compensatory damages, liquidated damages, attorneys' fees and costs.

### AS A FIFTH CAUSE OF ACTION
### VIOLATIONS OF THE WAGE THEFT PREVENTION ACT

85. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

86. Defendants failed to give Plaintiffs written notice regarding: their regular rate of pay, overtime rate of pay, how they were to be paid, their "regular payday," the official name of the employer and any other names used for business, the address and phone number of

13

the employer's main office or principal location, nor, allowances taken as part of the minimum wage (including, inter alia, tips), in violation of NYLL §195.

87. As this occurred for the entirety of Plaintiffs' employment, they are entitled to the maximum amount available under the law.

**WHEREFORE**, Plaintiffs respectfully request a judgment against Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by the FLSA and the NYLL by failing to pay Plaintiffs earned wages;

B. Declaring that Defendants engaged in unlawful employment practices prohibited by the NYLL by failing to give proper notice pursuant to the Wage Theft Prevention Act;

C. Awarding damages to Plaintiffs for all lost wages and benefits resulting from Defendants' unlawful employment practices and to otherwise make them whole for any losses suffered as a result of such unlawful employment practices;

D. Awarding Plaintiffs liquidated damages as a result of Defendants' willful failure to pay wages;

E. Awarding Plaintiff CHRISTIAN compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven as a result of the unlawful retaliation;

F. Awarding Plaintiffs attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

G. Awarding Plaintiffs such other and further relief as the Court may deem equitable, just and proper to remedy Defendants' unlawful employment practices.

Dated: New York, New York
       August 11, 2017

                                  **LAW OFFICE OF**
                                  **YURIY MOSHES, P.C.**

By:    _____/s/_____
       Alex Umansky, Esq.
       *Attorneys for Plaintiff*
       322 West 48th Street, 6th Floor
       New York, New York 10036
       (718) 504-6090
       aumansky@mosheslaw.com