UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JENET CHRISTIAN and NEIDHRA MAHENDRAN,<br><br>Plaintiff,<br><br>- against -<br><br>METROPOLITAN SPECIALTY LABS, INC., VADIM TEVELEV, *Individually*, and LEO ABROMOVSKY, *Individually*,<br><br>Defendants. | 17-cv-4721 (fb)(rlm)<br><br>**REQUEST FOR FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

Defendants in the above encaptioned case, requests that the Court, in rendering and making its judgment in the above entitled matter, which has been submitted to the Court, make specific findings of fact and conclusions of Law as follows:

## Findings of Fact

1. The Plaintiff Jenet Christian ("Christian") began working for the Defendant Metropolitan Specialty Labs, Inc. ("Metropolitan") as a Receptionist in or about February, 2012.

2. The Defendant Christian was paid the sum of $15.00 per hour for such work and thereafter received periodic increases and promotions.

3.    The Plaintiff Neidhra Mahendran began working for the Defendant Metropolitan as a Laboratory Technologist in or about December, 2010.

4.    The Plaintiff Mahendran was paid the sum of $26.00 per hour and thereafter received periodic increases and promotions.

5.    The Defendant Metropolitan is a New York State Corporation engaged in the business of performing blood and urine analysis for medical diagnostic purposes.

6.    The Defendant Vadim Tevelev ("Tevelev") is the president of the Defendant Metropolitan and was a supervisor of the Plaintiffs Christian and Mahendran.

7.    The Defendant Leo Abramovsky ("Abramovsky") is the CEO of the Defendant Metropolitan and was a supervisor of the Defendants Christian and Mahendran.

8.    That on or about July, 2012, the Defendant Metropolitan closed as the result of losing its license from the New York State Department of Health. The Defendant Metropolitan lost its license as the result of its Medical Director quitting leaving the Defendant Metropolitan without a Medical Director, which is a requisite of Licensure.

9.    That on or about October 29, 2012, the Defendant Metropolitan's business was further damaged as a result of Hurricane Sandy at which time its

facility, computers and equipment were damaged and its chemical reagents were spoiled.

10. That shortly after Hurricane Sandy damaged the Defendant Metropolitan's facility, the Defendants Tevelev and Abramovsky called together the employees of the Defendant Metropolitan and announced that the business was closed and advised them to find other jobs or to apply for unemployment insurance benefits. Most of the employees followed this advice.

11. That the Defendants Tevelev and Abramovsky thereafter met and consulted with Dr. Maqsood Sheikh, a Licensed Medical Director, and elected to try to revive and restart the business of the Defendant Metropolitan by re-applying for its license.

12. That during this period of closure, the Defendants Tevelev and Abramovsky asked a few former employees of the Defendant Metropolitan to clean and remediate the facility, restore computer services, and later to perform tests on three sample specimens provided by the NYS Dept. of Health, a procedure necessary in order to re-acquire the Defendant Metropolitan's license.

13. That during the period of closure, the Plaintiff Christian was asked to work on a *per diem* basis at the Defendant Metropolitan's facility for a few hours per week and was paid in cash. The cash was provided by the Defendant Abramovsky since the Defendant Metropolitan had no active operating account.

14. That this work was not a continuation of her previous employment at the Defendant Metropolitan, but a separate and distinct employment on an independent basis and no promises were made to continue her salary at the rate she was paid prior to the Defendant Metropolitan's closure.

15. That the Defendant Christian's claim to have worked full time during this period of closure is untenable as there was clearly not sufficient work at the Defendant Metropolitan's facility to require that amount of work to be performed.

16. That the $4,900.00 received by the Plaintiff Christian for the period of closure represents all of the Money owed to her for her work. Labor or services during that period.

17. That in or about July, 2013, agreed to return to Metropolitan in the capacity of a supervisor in order for the Defendant Metropolitan to retrieve its license. She worked at the Defendant Metropolitan's facility on a *per diem* basis during its closure.

18. That the NYS Dept. of Health restored the license of the Defendant Metropolitan in or about July 22, 2013, however, the Defendant Metropolitan could not resume operation until it also received approval from Medicare, in or about the end of 2013, because it could not bill for its services without such approval.

*Requests for Findings of Fact and Conclusions of Law - 4*

19. That the Plaintiffs Christian and Mahendran were provided with all required written notices pursuant to the Wage Theft Prevention Act, including their rates of pay, rates of over-time pay, how they were to be paid, their regular pay-days, and the name, addresses and phone number of the Defendant Metropolitan from the payroll company employed by Metropolitan to provide such services.

20. That for the period of February, 2012 (the commencement of her employment) through July, 2012 the Plaintiff Christian was paid for the hours that she worked at the agreed upon rates and has not established that she is entitled to any further unpaid salary or over-time wages for that period.

21. That for the year 2012, the Plaintiff Mahendran was issued a W-2 form (Plaintiff's Ex. 21 in Evidence) stating that she earned $47,462.38. This sum represents the total salary to which she was entitled for work performed during this period. She has not established that she was entitled to any further unpaid salary or over-time wages.

22. That for the year 2013, the Plaintiff Christian received a 1099 (Plaintiff's Ex. 13 in Evidence) for money paid to her during the period that the Defendant Metropolitan was not operational. The 1099 form indicates that she was paid the sum of $4,900.00, which is the total earnings that she was entitled to for work performed during this period.

23. That for the year 2013, the Plaintiff Mahendran received a 1099 (Plaintiff's 22 in Evidence) for money paid to her during the period that the Defendant Metropolitan was not operational. The 1099 form indicates that she was paid the sum of $2,700.00, which is the total earnings that she was entitled to for work performed during this period.

24. That the Payroll Register Reports for the period of January 1, 2014 through December 31, 2014 (Plaintiff's 15 in Evidence), January 1, 2015 through December 31, 2015 (Plaintiff's 16 in Evidence), and January 1, 2016 through December 31, 2016 (Plaintiff's 17 in Evidence), represents all of the money paid to the Plaintiff Christian for the periods set forth therein.

25. That the Payroll Register Reports for the period of January 1, 2014 through December 31, 2014 (Plaintiff's Ex. 25 in Evidence), represents all of the money paid to the Plaintiff Mahendran for the period set forth therein.

26. That the Plaintiff Mahendran introduced a copy of a letter, dated December 12, 2013 (Plaintiff's 24 in Evidence) purporting to be an acknowledgement by the Defendant Tevelev that the Plaintiff Mahendran was entitled to "the gross salary of $3,000 for a pay period of Two weeks". The Defendant Tevelev denies issuing this letter and claims it is not his signature affixed to that document. He further claims that the first time he has ever seen

that document was when a copy was produced in this litigation. The original has never been produced and a mere copy was admitted into evidence.

27. That this letter was contradicted by payroll records (Plaintiff's Ex. 25 in Evidence) which indicates that the Plaintiff Mahendran was paid the sum of $1,500.00 for each pay period and not $3,000.00 Bi-weekly.

28. In addition, the letter contains other internal inconsistencies. The Plaintiff Tevelev is listed as "Owner" instead of President; the Defendant Metropolitan lost its license due to the resignation of its medical director, not Hurricane Sandy which happened almost three months later; the letter commits to pay the past salary of the Plaintiff Mahendran, despite the fact that Mahendran admits that she was laid-off after Hurricane Sandy destroyed Metropolitan's facility. Moreover, the Court notes that the letter was written in considerably better English than the Defendant Tevelev commanded during his testimony.

29. That letter is clearly a forgery and does not demonstrate an agreement to double the Plaintiff Mahenran's salary nor to generously pay back wages to her for a period that she did not work.

30. That the Plaintiff Christian introduced a pay-stub for the period of 09/24 through 10/07/2012 (Plaintiff's 4 in Evidence) which appeared to be a one page document. While the lower portion of the pay-stub set forth a gross salary

of $1,950.00 for that two week pay period, with a net salary of $1,498.58 after standard payroll deductions, it also appeared to contain a typewritten memorandum acknowledging that the Defendant Metropolitan owed the Plaintiff the sum of $1,597.16 of which only $800.00 was paid.

31. That the Plaintiff Mahendran also introduced a pay-stub for that same period (Plaintiff's 20 in Evidence) which appeared to be a one page document like the Plaintiff Christian's. This pay-stub reflected a gross salary of $2,184.00 for the two week pay period with a net salary of $1,709.51 after the standard payroll deductions. This stub also appeared to have a typewritten memorandum allegedly acknowledging that the defendant Metropolitan owed the Plaintiff Mahendran the sum of $2,353.66 of which only $644.15 was paid.

32. The Plaintiffs claim that these documents, and others, were prepared by Svetlana Nemirovsky (or Nemirovskaya) whom they claim was a Vice-President of the Defendant Metropolitan and who supervised and paid them regularly.

33. At first, the two Plaintiffs contended that these pay-stubs evidenced a continuing under-payment of salary and over-time and an acknowledgement that the Defendant Metropolitan would repay these sums.

34. The Plaintiff Mahendran, however, later admitted that this one page document was really two separate pages that had been put together for

photocopying. She produced the two separate pages, claiming that they were included separately in her pay-envelope. She thereafter "recollected" that the memorandum was actually an acknowledgement that her pay-check had bounced and that she had received payment in cash, but not the full amount. It goes without saying, the acknowledgement of a bounced checkcould not have come in the same envelope as the check and pay-stub.

35. That throughout this trial, the Plaintiffs have relied upon promises allegedly made by, and documents allegedly prepared by, Svetlana Nemirovsky whom they allege to be a vice president of the Defendant Metropolitan and their Supervisor. The Defendants deny that Ms. Nemirovsky was ever an employee of the Defendant Metropolitan and claim that she never had an official position with them. Instead they testified that Ms. Nemirovsky was the wife of close friend of the Defendant Abramovsky, who volunteered a few hours each week to translate for Mr. Abramovsky because he spoke very little English. She was not compensated for this work.

36. It is unarguable that the testimony of Ms Nemirovsky would have been material to claims of the Plaintiffs in the instant matter.

37. Despite being offered ample opportunity and assistance from the Court in securing Ms. Nemirovsy's appearance and testimony, the Plaintiff chose not to call her as a witness.

38.   Plaintiffs have not introduced any evidence as to the amount of money earned by the Defendant Metropolitan in the year preceding filing the instant action, nor have they established any evidence that the said Defendant was regularly engaged in interstate commerce.

39.   That the Plaintiff Christian's employment was not terminated by the Defendants but rather she left of her own accord after being offered a contract for the same position and salary with the Defendant Metropolitan's new Management Company.

40.   That the Plaintiff Mahendran was not terminated by the Defendants but left on an extended medical leave and never returned.

## Conclusions of Law

41.   That the testimony of the Plaintiffs Jenet Christian and Neidhra Mahendran was contradictory and lacking credibility particularly in that they could not have performed much of the work that they alleged that they have performed.  Moreover, their claims that the Defendants gratuitously agreed to pay them full salaries at a time when the Defendant Metropolitan was decidedly out of business, is incredible.  Their claims that they continued to work for the Defendant Metropolitan over the course of several years while consistently having their salaries stolen from them is also without credibility.

42.   That the Plaintiffs, who have the burden of proof herein, have failed to call Svetlana Nemirovsky as a witness.  Ms. Nemirovsky is a person central to the Plaintiffs' claims and who allegedly executed vital documents and made alleged promises to the Plaintiffs concerning repayment of their salaries.  The Plaintiffs received ample opportunity to call her as a witness and the Court offered its assistance in obtaining the witnesses' presence in court. Nevertheless, the Plaintiffs elected not to call her.  Accordingly, the Defendants are entitled to an adverse inference that any testimony that Ms. Nemirovsky would have given, would have been adverse to the Plaintiffs' claims.

43.   That the Plaintiffs have failed to meet their burden of proof as to their First Cause of Action for Violation of the Fair Labor Standards Act in that they have not proven that the Defendants failed to compensate the Plaintiffs at the required minimum hourly rate for their employment.

44.   That the Plaintiffs have failed to meet their burden of proof as to their Second Cause of Action for Violation of the New York Labor Law §625(1) in that they have not proven that the Defendants have willfully or unwillfully failed to pay the Plaintiffs the required minimum hourly wage for their work.

45.   That the Plaintiffs have failed to meet their burden of proof as to their Third Cause of Action under the New York Labor Law §193, in that they have not proven that the Defendants have withheld the Plaintiffs' wages without

cause or a bona fide dispute as to the Plaintiffs' rights or the Defendants' obligations to pay.

46. That the Plaintiffs have failed to meet their burden of proof as to their Fourth Cause of Action under New York Labor Law §215 in that they have not proven that either Plaintiff was terminated as a result of a complaint by such Plaintiff to the employer.

47. That the Plaintiffs have failed to meet their burden of proof as to their Fifth Cause of Action the Wage Theft Prevention Act in that they have not proven that the Defendants failed to give written notice to them regarding their regular rate of pay, their overtime rate of pay, how they were to be paid, their regular pay-day, the official name of the employer, and the address and phone number of the employer.

48. That accordingly, the action must be dismissed.

Dated:     Brooklyn, New York
           July 10, 2019

                                   Respectfully Submitted,

                                   ALTER & BARBARO, ESQS.
                                   *Attorneys for Defendants*
                                   *Metropolitan, Tevelev and*
                                   *Abramovsky*
                                   26 Court Street, Suite 1812
                                   Brooklyn, New York 11242
                                   Tel. (718) 237-0880

                                   By: STEPHEN V. BARBARO

*Requests for Findings of Fact and Conclusions of Law - 12*

To: Law Office of YURIY MOSHES, PC.
*Attorneys for Plaintiff*
322 West 48th Street, 6th Floor
Brooklyn, New York  11236